ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
ROYE ZUR, State Bar No. 273875
*rzur@elkinskalt.com*
LAUREN N. GANS, State Bar No. 247542
*lgans@elkinskalt.com*
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400
Facsimile: 310.746.4499

Proposed Attorneys for Mowbray Waterman Property, LLC

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

In re

MOWBRAY WATERMAN PROPERTY, LLC,

Debtor and Debtor-in-Possession.

Case No. 8:25-bk-10542-TA

**DEBTOR'S APPLICATION TO EMPLOY LEE & ASSOCIATES WALNUT CREEK COMMERCIAL REAL ESTATE SERVICES, INC., AND LEE & ASSOCIATES COMMERCIAL REAL ESTATE SERVICES, INC. – RIVERSIDE AS REAL ESTATE BROKERS; STATEMENTS OF DISINTERESTEDNESS OF LES COPELIN, CODY MORAN, AND MICHAEL WALKER**

[No Hearing Required Pursuant to Local Bankruptcy Rules 2014-1(b)(1) and 9013-1(o)]

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE:**

Mowbray Waterman Property, LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Debtor"), by and through its counsel of record, hereby submits this *Application to Employ Lee & Associates Walnut Creek Commercial Real Estate Services, Inc., and Lee & Associates Commercial Real Estate Services, Inc. – Riverside As Real Estate Brokers* (the "Application") pursuant to 11 U.S.C. § 327. In support of the Application, the Debtor submits the appended *Statements of Disinterestedness of Les Copelin, Cody Moran, and Michael Walker* and

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

respectfully represents as follows:

## I. BACKGROUND

### A. General Background

The Debtor is a California limited liability company. Robin Mowbray, a debtor in bankruptcy case no. 8:25-bk-10543-TA, is the Debtor's managing member and 51% owner, with the remaining 49% owned by the Gloria Mowbray Separate Property Trust, a special needs trust of which Robin Mowbray is the Trustee, and her father, John Mowbray is the beneficiary. The Debtor has no employees but contracts with Robin Mowbray to provide various management services.

The Debtor owns five real properties in California collectively valued at approximately $10,000,000. Two of the Debtor's properties generate approximately $40,000 in monthly revenue. The two properties for which the Debtor seeks to retain a real estate broker pursuant to this application do not currently generate any income.

The Debtor has two secured creditors: (1) Bank of the Sierra ("BOTS"), which has a lien on the Debtor's property located at 686 E. Mill St., San Bernardino, CA to a secure an approximate $2.9 million obligation, and (2) PNC Bank, N.A. ("PNC") which has liens on the Debtor's properties located at 386 Allen St., San Bernardino, CA and 9546 Elder Creek Rd., Sacramento, CA. The Debtor is a guarantor of the approximate $7 million debt to PNC Bank owed by the Debtor's affiliate, The Original Mowbray's Tree Service, Inc. ("MTS"), the debtor in Case No. 8:24-bk-12674-TA. In July 2024, the Debtor provided the liens to PNC in connection with a forbearance agreement between MTS and PNC.

### B. Commencement of the Case

The Debtor is a defendant in state court litigation brought by Ronnie Jordan (the "Jordan Litigation"). Mr. Jordan was terminated from MTS in January, 2022 and now asserts, among other things, that he is entitled to $7.2 million to $15.2 million in compensation pursuant to alleged enforceable written and oral agreements. In addition to seeking millions of dollars in damages against MTS, Mr. Jordan also is seeking damages against the Debtor, claiming to have also been employed by the Debtor. The Debtor denies that Mr. Jordan ever was employed by the Debtor or that there is any basis for liability to Mr. Jordan.

Trial was set to begin in the Jordan Litigation in February 2025. The Debtor was compelled to file this case to protect its business and the value of its estate for all stakeholders, while restructuring the Debtor's legitimate obligations in an orderly and fair and equitable manner.

On February 19, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**C. <u>The Proposed Brokers and Properties for Sale.</u>**

The Debtor seeks to employ (1) Lee & Associates Commercial Real Estate Services, Inc.-Riverside ("L&A Riverside") by and through its agents, Les Copelin ("Copelin") and Cody Moran ("Moran"); and (2) Lee & Associates Walnut Creek Commercial Real Estate Services, Inc. ("L&A WC"), by and through its agent, Michael Walker ("Walker"). The term "Brokers" as used herein refers collectively to L&A WC and L&A Riverside, and "Licensed Agents" refers collectively to Copelin, Moran and Walker.

The Debtor seeks to employ L&A Riverside, to market and sell, subject to Bankruptcy Court approval, its property located at 386 S. Allen St., San Bernardino, CA ("Allen St.") and L&A WC, to market and sell, subject to Bankruptcy Court approval, its property located at 9546 Elder Creek Rd., Sacramento, California, 95829-9306 ("Elder Creek"). L&A Riverside has been marketing Allen St. on behalf of the Debtor since November 2023, and L&A WC has been marketing Elder Creek on behalf of the Debtor since February 2023.

Allen St. is 1.9 acres of vacant commercial property comprising five separate parcels (APNs 0136-251-28, 02136-251-29, 0136-251-30, 0136-251-31, 0136-251-40 ). Elder Creek is 8.16 acres of vacant commercial property (APN 066-0010-032-000). PNC has a lien on both Allen St. and Elder Creek, and there is currently no tenant on either property.

The listing and marketing of the properties by the reputable Brokers by and through their well-qualified Licensed Agents will assist in maximizing the value of the properties for the benefit of the creditors of the Debtor's estate. Any sale of the properties will be the subject of a further motion.

/ / /

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**II. PROPOSED EMPLOYMENT AND LICENSED AGENTS' QUALIFICATIONS**

**A. Proposed Terms of Employment**

The terms of L&A Riverside's engagement to sell Allen St is set forth in Exclusive Authorization to Sell, dated February 25, 2025 (the "Allen St. Listing Agreement") attached hereto as Exhibit "1." Pursuant to the Allen St. Listing Agreement, L&A Riverside has the exclusive right to sell Allen St. through August 25, 2025 (though the Debtor intends to sell Allen St. well in advance of that date). Copelin and Moran will be the Licensed Agents marketing and selling the Allen St. property, which will be offered for sale with a listing price of $2,350,000. The Broker's total commission will be 6.00% of the gross sale price.

The terms of L&A WC's engagement to sell Elder Creek in is set forth in Exclusive Authorization to Sell, dated March 13, 2025 (the "Elder Creek Listing Agreement," and collectively with the Allen St. Listing Agreement, the "Listing Agreements") attached hereto as Exhibit "2." Pursuant to the Elder Creek Listing Agreement, L&A WC has the exclusive right to sell Elder Creek through March 31, 2026 (though the Debtor intends to sell Elder Creek well in advance of that date). Walker will be the Licensed Agent marketing and selling Elder Creek which will be offered for sale with a listing price of $2,600,000. The Broker's total commission will be 6.00% of the gross sale price.

The sale of any of the estate's properties will be conducted pursuant to the bidding procedures set forth in a bidding procedures motion to be proposed by the Debtor.

**B. The Licensed Agents' Qualifications**

Copelin specializes in office properties throughout the Inland Empire, primarily focusing on the East end of the Inland Empire, consisting of San Bernardino, Redlands, Colton, and Grand Terrace. Copelin specializes in working with business owners, tenants, and buyers for the purpose of leasing, selling, or purchasing office buildings or space in the Inland Empire and greater Southern California marketplace. As an office market expert, Copelin also serves tenants, investors, and developers with a primary focus on building long term relationships with clients while becoming an "in-house" real estate expert for clients.

Copelin earned an MBA from Cal State San Bernardino, graduating in 1988 and began his

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

career working for a prominent local developer, The Sunset Group, handling all in-house office leasing. After three very successful years with Grubb & Ellis, Copelin joined L&A Riverside in 1993. With over 20 years with Lee & Associates, Copelin has leased and sold over 7 million square feet of office and industrial space. Copelin has a strong and successful relationship with the County of San Bernardino, facilitating several build-to-suit office projects in the past several years, as well as completing several county office leases. Copelin's noteworthy clients include: Birtcher Development, ICO Development, Triad Investments, The Koll Company, Coast Properties, Greenwood & McKenzie, Gildred Development, Trane Co. and many others.

Moran is a market expert in Industrial and Commercial properties across the Inland Southern California Region, serving clients in Riverside and San Bernardino Counties. Moran first joined L&A Riverside in 2010. Moran has a vast range of experience in real estate, leasing, transaction management and financial services. He has a wealth of knowledge in industrial/ manufacturing and logistics properties, land, contractor's yard properties, as well as owner-user commercial building sales and value-add sites.

Walker specializes in service delivery and representation for private and institutional owners and users of industrial, office, land, and investment properties and has been a leading East Bay commercial property professional since 1985. Walker is known for his systematic approach to working through the transactional process. He is skilled at anticipating potential opportunities for problems. His clear and thorough approach to communication gives clients confidence and builds consensus among decision-makers. Serving the most vigorous markets of Northern California, he has good insight into emerging migration trends, active user groups, and market fluctuations.

Finally, the Brokers are very familiar with Allen St. and Elder Creek, and the specific markets for each of these properties, given that they have been marketing these properties since 2023.

## III. DISCLOSURES

The Brokers were retained pre-petition by the Debtor to market Allen St. and Elder Creek. They have not received any compensation or expense reimbursement since they were retained on a commission basis only and the subject properties were not sold pre-petition. Other than as set forth

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

below, the Brokers do not have any other connection to the Debtor.

**IV. NO FEE APPLICATION REQUIRED**

The Debtor seeks to employ the Brokers pursuant to 11 U.S.C. §§ 327 and 328 and to compensate the Brokers out of the proceeds of a Court-approved sale of the applicable property at the close of escrow of each sale. When a sale is successfully negotiated, the Debtor will file a motion for authority to consummate the sale and to pay the applicable Broker's commission from the proceeds in accordance with the Listing Agreement.

**V. THE BROKERS ARE DISINTERESTED AND DO NOT HOLD OR REPRESENT ANY INTEREST ADVERSE TO THE ESTATE**

"Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

Here, the Debtor is the debtor-in-possession, and pursuant to 11 U.S.C. § 1107(a), has the rights of a trustee, including the right to seek to employ the Broker. Except as provided herein, to the best of the Debtor's knowledge, and based upon the statement of disinterestedness filed concurrently herewith:

1. Except as otherwise stated, neither the Brokers nor any of the Licensed Agents associated with the Brokers has any connection with the Debtor, the principals of the Debtor, insiders, creditors, any other party or parties in interest, their respective attorneys and accountants, or any person employed in the Office of the United States Trustee. Copelin previously represented the Debtor in its acquisition of Allen St. and Elder Creek (in April and August 2022, respectively), as well as the Debtor's acquisition of its other properties. Copelin also has represented the Debtor and the Debtor's affiliate – The Original Mowbray's Tree Service, Inc. ("MTS") – on various leasing issues and arrangements.

2. None of the Brokers, is a creditor of the Debtor, an equity security holder in the Debtor, or an insider of the Debtor.

3. None of the Brokers is or was an investment banker for any outstanding security of

the Debtor.

4. None of the Brokers has been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an auditor/accountant for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

5. None of the Brokers is or was, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

6. None of the Brokers represents an individual or entity which holds an interest adverse to the Debtor.

7. None of the Brokers, or their respective partners, agents, or employees is related to the bankruptcy judge in this case.

8. The Brokers are disinterested within the meaning of 11 U.S.C. §§ 327(a) and 101(14).

9. Except as to any cooperating broker(s) on the purchase and sale of the Property (as specified herein and in the Listing Agreements), the Brokers have no fee sharing arrangement, understanding, or compensation sharing arrangement with any other entity, and no part of the fees or expenses awarded to the Brokers will be paid to any other entity.

10. The employment of the Brokers and their Licensed Agents is in the best interest of the Debtor and the estate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**VI. CONCLUSION**

WHEREFORE, the Debtor prays that the Court enter an order:

1. Authorizing the Debtor to employ the Brokers as its real estate brokers, by and through their Licensed Agents – Les Copelin, Cody Moran and Michael Walker – on the terms set forth in the Listing Agreements attached hereto as Exhibits "1," and "2" to the extent they are consistent with this Application and the Bankruptcy Code.

2. Granting such other relief as the Court may deem just and appropriate.

DATED: March 26, 2025

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP

By: ______________________________
ROYE ZUR
LAUREN GANS
Proposed Attorneys for Debtor and Debtor-in-Possession Mowbray Waterman Property, LLC

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014**

1. Name, address and telephone number of the professional (the "Broker") submitting this Statement:

Les Copelin
Lee & Associates Commercial Real Estate Services, Inc.- Riverside
3240 Mission Inn Avenue
Riverside, CA 92507
(310) 951-276-3629

2. The services to be rendered by the Broker, by and through its Licensed Agent, Les Copelin, in this case are:

The Broker will market Allen St. for sale to the highest and best offer for the anticipated sale pursuant to the Listing Agreement attached hereto as Exhibit "1." The sale of the property will be conducted pursuant to the bidding procedures proposed by the Debtor, subject to approval by the Court.

3. The terms and source of the proposed compensation and reimbursement of the Broker are:

The Broker's total commission will be 6.00% of the gross sale price for Allen St.

4. The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Broker are:

None.

5. The investigation of disinterestedness made by the Broker prior to submitting this Statement consisted of:

Submitted to the Broker's conflicts check system.

6. The following is a complete description of all of the Broker's connections with the Debtor, principals of the Debtor, insiders, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee:

Les Copelin previously represented the Debtor in its acquisition of Allen St. and Elder Creek (in April and August 2022, respectively), as well as the Debtor's acquisition of its other properties. Copelin also has represented the Debtor and the Debtor's affiliate – The Original Mowbray's Tree Service, Inc. – on various leasing issues and arrangements.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

7. Neither the Broker nor Les Copelin is a creditor, equity security holder or insider of the Debtor.

8. Neither the Broker nor Les Copelin is or was an investment banker for any outstanding security of the Debtor.

9. Neither the Broker nor Les Copelin has been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

10. Neither the Broker nor Les Copelin is or was, within two (2) years before the date of the filing of the petition herein, a director, officer, or employee of the Debtor or of any investment banker for any security of the Debtor.

11. Neither the Broker nor Les Copelin represents an individual or entity which holds an interest adverse to the Debtor.

12. Name, address and telephone number of the person signing this Statement:

Les Copelin
Lee & Associates Commercial Real Estate Services, Inc.- Riverside
3240 Mission Inn Avenue
Riverside, CA 92507
(310) 951-276-3629

13. None of the Broker nor its partners or employees is related to the bankruptcy judge in this case.

14. Les Copelin's resume is attached as Exhibit "3."

After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 6 through 11 are stated on information and belief.

Executed on the _____ day of March, 2025, at ________________, California.
2025-Mar-25 | 14:59 PDT

DocuSigned by:
Les Copelin
4E8CB78FF4974DA... Les Copelin

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014**

1. Name, address and telephone number of the professional (the "Broker") submitting this Statement:

Cody Moran
Lee & Associates Commercial Real Estate Services, Inc.- Riverside
3240 Mission Inn Avenue
Riverside, CA 92507
(310) 951-276-3624

2. The services to be rendered by the Broker, by and through its Licensed Agents, Cody Moran and Les Copelin, in this case are:

The Broker will market Allen St. for sale to the highest and best offer for the anticipated sale pursuant to the Listing Agreement attached hereto as Exhibit "1." The sale of the property will be conducted pursuant to the bidding procedures proposed by the Debtor, subject to approval by the Court.

3. The terms and source of the proposed compensation and reimbursement of the Broker are:

The Brokers' total commission will be 6.00% of the gross sale price for Allen St.

4. The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Broker are:

None.

5. The investigation of disinterestedness made by the Broker prior to submitting this Statement consisted of:

Submitted to the Broker's conflicts check system.

6. The following is a complete description of all of the Broker's connections with the Debtor, principals of the Debtor, insiders, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee:

None.

7. Neither the Broker nor Cody Moran is a creditor, equity security holder or insider of the Debtor.

8. Neither the Broker nor Cody Moran is or was an investment banker for any outstanding security of the Debtor.

9. Neither the Broker nor Cody Moran has been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

10. Neither the Broker nor Cody Moran is or was, within two (2) years before the date of the filing of the petition herein, a director, officer, or employee of the Debtor or of any investment banker for any security of the Debtor.

11. Neither the Broker nor Cody Moran represents an individual or entity which holds an interest adverse to the Debtor.

12. Name, address and telephone number of the person signing this Statement:

Cody Moran
Lee & Associates Commercial Real Estate Services, Inc.- Riverside
3240 Mission Inn Avenue
Riverside, CA 92507
(310) 951-276-3624

13. None of the Broker nor its partners or employees is related to the bankruptcy judge in this case.

14. Cody Moran's resume is attached as Exhibit "4."

After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 6 through 11 are stated on information and belief.

Executed on the _____ day of March, 2025, at ________________, California.
2025-Mar-25 | 15:05 PDT

DocuSigned by:
Cody Moran
185FD1D6E30F4A4
Cody Moran

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014**

1. Name, address and telephone number of the professional (the "Broker") submitting this Statement:

Michael Walker
Lee & Associates Walnut Creek Commercial Real Estate, Inc.,
1407 Oakland Blvd, Suite 103,
Walnut Creek, CA 94596
(925) 239-1430

2. The services to be rendered by the Broker, by and through its Licensed Agent, Michael Walker, in this case are:

The Broker will market Elder Creek for sale to the highest and best offer for the anticipated sale pursuant to the Listing Agreement attached hereto as Exhibit "2." The sale of the property will be conducted pursuant to the bidding procedures proposed by the Debtor, subject to approval by the Court.

3. The terms and source of the proposed compensation and reimbursement of the Broker are:

The Broker's total commission will be 6.00% of the gross sale price for Elder Creek.

4. The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Broker are:

None.

5. The investigation of disinterestedness made by the Broker prior to submitting this Statement consisted of:

Submitted to the Broker's conflicts check system.

6. The following is a complete description of all of the Broker's connections with the Debtor, principals of the Debtor, insiders, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee:

Michael Walker previously represented the Debtor in its acquisition of Elder Creek in 2022.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

7. Neither the Broker nor Michael Walker is a creditor, equity security holder or insider of the Debtor.

8. Neither the Broker nor Michael Walker is or was an investment banker for any outstanding security of the Debtor.

9. Neither the Broker nor Michael Walker has been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

10. Neither the Broker nor Michael Walker is or was, within two (2) years before the date of the filing of the petition herein, a director, officer, or employee of the Debtor or of any investment banker for any security of the Debtor.

11. Neither the Broker nor Michael Walker represents an individual or entity which holds an interest adverse to the Debtor.

12. Name, address and telephone number of the person signing this Statement:

Michael Walker
Lee & Associates Walnut Creek Commercial Real Estate, Inc.,
1407 Oakland Blvd, Suite 103,
Walnut Creek, CA 94596
(925) 239-1430

13. None of the Broker nor its partners or employees is related to the bankruptcy judge in this case.

14. Michael Walker's resume is attached as Exhibit "5."

After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 6 through 11 are stated on information and belief.

Executed on the _____ day of March, 2025, at ________________, California.
2025-Mar-25 | 17:25 PDT

Signed by:
3671305549284F5... Michael Walker

# EXHIBIT 1

# EXCLUSIVE AUTHORIZATION TO SELL

OWNER: Mowbray Waterman Property, LLC Reference Date: February 25, 2025

OWNER hereby employs **Lee & Associates® Commercial Real Estate Services, Inc. - Riverside** ("Broker") as Owner's exclusive agent to sell the subject property (the "Property)

1. **Property and Listing Terms:**

| | |
|---|---|
| Commencing: | February 25, 2025 |
| Terminating: | August 25, 2025 |
| Property Address: | 386 S. Allen Street |
| City \| State \| County: | San Bernardino, CA, County of San Bernardino |
| Described as: | 5 Separate Legal Land Parcels (APNs: 0136-251-40, 0136-251-28, 0136-251-30, 0136-251-29, 0136-251-31) |
| Price and terms of the sales(s): | **List Price of $2,350,000.00 & Price or Terms Acceptable to Seller** |

2. **Listing Team – DRE#:** **Les Copelin- DRE: 00995220, Cody Moran- DRE: 02036603**

3. **Commission**. In consideration of this Authorization and Broker's agreement to diligently pursue the procurement of a purchaser for the property, Owner agrees to pay Broker a commission as set forth in the attached SCHEDULE OF COMMISSIONS attached hereto and incorporated herein by this reference. Owner shall pay said commission to Broker if: (a) the property or any interest therein is sold, transferred or conveyed by or through a Broker, Owner or any other party prior to the expiration of this Authorization or any extension hereof; or (b) a purchaser is procured by or through Broker, Owner or any other party who is ready, willing and able to purchase the Property or any interest therein on the terms above stated or other terms reasonably acceptable to Owner prior to the expiration of this Authorization or any extension hereof; or (c) any contract for the sale, transfer or conveyance of the Property or any interest therein is made directly or indirectly by Owner prior to the expiration of this Authorization or any extension hereof; or (d) the Property is withdrawn from sale without the written consent of Broker or made unmarketable by Owner's voluntary act during the term of this Authorization of any extension hereof; or (e) within one hundred eighty (180) days after the expiration of this Authorization or any extension hereof, the Property or any interest therein is sold, transferred, or conveyed to any person or entity with whom Broker has negotiated or to whom Broker has submitted the Property prior to such expiration in any effort to effect a transaction and whose name appears on any list of such persons or entities which Broker shall have mailed to Owner at the address below stated within thirty (30) days following such expiration, provided that if Broker has submitted a written offer to purchase or lease it shall not be necessary to include the offeror's name on the list. If a lease is made by Broker, Owner or any other party prior to the expiration of this Authorization or any extension hereof, or during the one hundred eighty (180) – day period thereafter, Owner shall pay Broker a commission as set forth in the attached SCHEDULE OF COMMISSIONS.

4. **Broker's Duties**. Owner authorizes Broker to place signs on the Property, to distribute information regarding the Property to prospective purchasers, to list the Property on appropriate multiple listing services, and to market the Property to other brokers. Owner agrees that Broker may, during the ordinary and normal course of marketing the Property, respond to inquiries about the Property by showing and providing information on the Property.

5. **Automatic Extension of Term.** If during the terms of this Authorization or any extension hereof an escrow is opened or negotiations involving the sale, transfer, conveyance or leasing of the Property have commenced and are continuing, then the term of this Authorization shall be extended for a period through the closing of

DS RM
INITIAL



such escrow, the termination of such negotiations or the consummation of such transaction, provided this Authorization would otherwise have expired during such period.

6. **Escrow.** Owner agrees that Broker shall be included as a party to any escrow opened for the sale of the Property and the terms of said escrow shall provide that Broker shall have the right to request the escrow holder to make payment to Broker in the amount of Broker's commission as set forth on the SCHEDULE OF COMMISSIONS attached hereto from any sale proceeds and/or deposits held in escrow.

7. **Owner/Broker Cooperation**. Owner agrees to cooperate with Broker in effecting a sale of the Property and immediately to refer to Broker all inquiries of any party interested in the Property. All negotiations are to be through Broker. Owner agrees to pay all customary escrow, title and revenue charges and to execute such documents as may be necessary to effect a sale of the Property. Broker is authorized to accept deposit from any prospective purchaser. Any deposits forfeited to Owner shall be equally divided between Owner and Broker, except that Broker's portion thereof shall not exceed the compensation provided for herein. Broker is further authorized to advertise the Property and shall have the exclusive right to place a sign or signs on the Property if, in Broker's opinion, such would facilitate the sale and leasing thereof.

8. **Equal Opportunity**. It is understood that it is illegal for either Owner or Broker to refuse to present, sell or lease to any person because of race, color, religion, national origin, sex, marital status or physical disability.

9. **Condition of Property Disclosure**. Owner acknowledges that Broker is not obligated to and has made no independent investigation of the physical conditions of the Property. All documents and materials, investigations, reports and information with respect to the physical condition of the Property shall be furnished to prospective purchasers on Owner's behalf and Owner shall be solely responsible for same. Owner agrees to indemnify, defend and hold Broker harmless from and against all claims, settlements and judgments and all costs of defense against such claims (including reasonable attorneys' fees and disbursements) suffered by Broker that arise out of or relate to the physical conditions, Owner's title and/or the marketability thereof.

10. **No Authority to Bind Owner.** Notwithstanding anything contained herein to the contrary, Broker shall have no right to enter into any agreement in the name of Owner, or otherwise obligate Owner in any manner without Owner's prior written approval.

11. **Representations and Warranties**. Owner warrants that he/she/it is the owner of record of the property or has the legal authority to execute this Authorization. Owner agrees to hold Broker harmless from any liability or damages arising from any incorrect information supplied by Owner or any information which Owner fails to supply. Owner acknowledges receipt of a copy of this Authorization and the attached SCHEDULE OF COMMISSIONS, which Owner has read and understands. Each person executing this Authorization on behalf of Owner has the full right, power and authority to execute this Authorization as, or on behalf of, Owner and any sale resulting therefrom. Broker shall not be required to undertake any investigation to determine Owner's authority to enter into this Authorization. Owner further warrants that there are no effective, valid or enforceable option rights, rights of first refusal, rights of first offer or any other restrictions, impediments or limitations on Owner's right, ability and capacity to consummate a sale.

12. **Limitation of Liability.** The parties agree that no lawsuit or legal proceeding involving any breach of duty, error or omission relating to the services performed by Broker pursuant to this Authorization may be brought against Broker more than one year after the expiration of the term of this Authorization and that the liability (including court costs and attorneys' fees), of any Broker with respect to any breach of duty, error or omission relating to this Agreement shall not exceed the fee received by such Broker pursuant to this Authorization; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

13. **Termination and Renewal.** Unless terminated by either party, this Agreement will automatically renew for additional six-month terms. The Agreement may continue to renew for successive thirty-day periods up to a maximum listing period of **two (2) years**, unless one of the following conditions is met: a) The Property is sold. b) Either party provides written notice of non-renewal to the other party at least thirty (30) days prior to the end

DS RM
INITIAL________

of any term or renewal period. c) The Agreement is extended by Lessor, with written notice provided at least thirty (30) days prior to the end of any term or renewal period.

14. **ARBITRATION OF DISPUTES. Broker and Owner agree that any claim or controversy will be resolved by submission to binding arbitration at the offices of Judicial Arbitration & Mediation Services, Inc. (JAMS) in the county where the property is located. The parties may agree on a retired judge from the JAMS panel. If they are unable to agree, JAMS will provide a list of three available judges and each party may strike one. The remaining judge will serve as the arbitrator. The award of the arbitrator shall be a final and non-appealable result. The arbitration award may be entered as a judgment in any court of competent jurisdiction. Such binding arbitration shall be conducted by JAMS in accordance with the California Code of Civil Procedures Section 1280 ET SEQ. and California Rules of Court Rules 3.810 through 3.830.**

**The parties further agree that the prevailing party of such arbitration shall be entitled to be awarded its costs of suit including, but not limited to, reasonable attorney's fees, expenses and the costs of arbitration.**

**NOTICE: By initialing in the space below, you are agreeing to have any dispute arising out of the matters included in the "Arbitration of Disputes" provision decided by neutral arbitration as provided by California Law and you are giving up any rights you may possess to have the dispute litigated in a court or by jury trial. By initialing in the space below, you are giving up your judicial rights of discovery and appeal, unless those rights are specifically included in the "Arbitration of Disputes" provision. If you refuse to submit to arbitration after agreeing to this provision, you may be compelled to arbitrate under the authority of the California Code of Civil Procedure. Your agreement to this arbitration provision is voluntary.**

**We have read the undergoing and the foregoing and agree to submit disputes arising out of the matter included in the "Arbitration of Disputes" provision to neutral arbitration.**

**OWNER:** DS RM **BROKER:** DS CM DS LL

15. **Attorneys' Fees.** If either Owner or Broker commences any litigation to enforce the terms of this Authorization, the prevailing party shall be entitled to receive reasonable attorney's fee from the other party hereto.

16. **LOCKBOX AUTHORIZATION. In order to promote the leasing of the Property, Owner hereby requests and authorizes Lee & Associates to install at the Property or a portion of the Property a standard keysafe/lockbox to hold a key to the Property for use by interested persons to gain access to the Property for inspection in connection with selling. Owner agrees that Lee & Associates cannot assure or insure to Owner that such keysafe/lockbox is not subject to misuse or theft and acknowledges that access gained using a key from the keysafe/lockbox could result in theft, vandalism, personal injury or property damage. Owner hereby assumes all risk and liability that could arise from such misuse or theft. If a person or entity other than Owner occupies any portion of the Property to be accessed using the keysafe/lockbox, Owner agrees to be responsible for obtaining the written consent of such occupant for use of a keysafe/lockbox in the manner described above.**

**OWNER:** DS RM **BROKER:** DS CM DS LL

17. **Related Documents.** By signing below, Owner hereby acknowledges receipt of:
Notice to Owners, Buyers and Tenants Concerning the Americans with Disabilities Act.
Notice to Owners, Buyers and Tenants regarding Hazardous Wastes or Substances and Underground Storage Tanks.

18. **Modification and Integration.** This Agreement may only be amended, supplemented or otherwise altered with the express written consent of all parties hereto. This Agreement embodies the entire understanding of the parties with regard to the subject matter hereof. All prior communications or agreements, whether written or oral, between the parties are superseded unless expressly incorporated or made a part hereof.

INITIAL DS RM

**Receipt of a copy hereof is acknowledged.**

| | | | |
|---|---|---|---|
| Dated: | 2025-Feb-26 \| 10:54 PST | Date: | 2025-Feb-26 \| 10:59 PST |
| **Owner:** | **Mowbray Waterman Property, LLC** | **Broker:** | **Lee & Associates Commercial Real Estate Services, Inc. – Riverside Corporate DRE # 01048055** |
| By: | DocuSigned by: Robin Mowbray 535733985426408... | By: | DocuSigned by: Cody Moran 185FD1D6E30F4A4... |
| Name/Title: | Robin Mowbray/ Owner | Name/Title: | Cody Moran/ Vice President |
| By: | | By: | DocuSigned by: Les Copelin 4E8CB78FF4974DA... 2025-Feb-26 \| 13 |
| Name/Title: | | Name/Title: | Les Copelin/Senior Vice President |
| Address: | 686 E MILL ST # 2 | Address: | 3240 MISSION INN AVE |
| | SAN BERNARDINO, CA 92415 | | RIVERSIDE, CA 92507 |
| Telephone: | 909-389-0077 | Telephone: | 951-276-3600 |
| Email: | | Email: | |

INITIAL DS RM



# SCHEDULE OF COMMISSIONS

## A. SALES, EXCHANGES, AND OTHER TRANSFERS

1. **Unimproved Property** (substantially lacking amenities necessary for urban development, such as roads, utilities or zoning): 10% of the gross sales price.
2. **Improved Property: 6% of the gross sales price.**
3. **Exchange:** Each party to the exchange shall pay a full sales commission based on the type of property in accordance with this Schedule.
4. **Joint Venture:** If a joint venture is effected in lieu of a sale, a full sales commission shall be paid on the basis of the value of the property as determined for purposes of the joint venture agreement and the percentage interest thereof which is being conveyed to the joint venture or the joint venturers.
5. **Business Opportunity:** 10% of the gross sales price.

## B. LEASES

| GROSS LEASE | NET LEASE<br>(where lessee pays all real property taxes) |
|---|---|
| 7% of the rent for the first year; | 7% of the rent for the first year; |
| 6% of the rent for the second year; | 7% of the rent for the second year; |
| 5% of the rent for the third year; | 6% of the rent for the third year; |
| 4% of the rent for the fourth year; | 5% of the rent for the fourth year; |
| 4% of the rent for the fifth year; | 5% of the rent for the fifth year; |
| 3% of the rent for the next five years; | 4% of the rent for the next five years; |
| 2% of the rent for the balance of the term | 3% of the rent for the balance of the term |

1. **Term of More Than 30 Years:** Including Ground Leases, if the initial lease term is in excess of 30 years, then the commission shall be calculated only upon the rental to be paid during the first 30 years of the term of the lease.
2. **Sublease or Assignment:** 6% of the rent payable under the assignment of subleasing of a gross lease during the balance of the term or 7% in the case of a net lease. If a cash bonus or lump sum is paid by the successor lessee, a sales commission shall also be paid in accordance with this Schedule.
3. **Month-to-Month Tenancy:** The commission shall be 50% of the first month's rent but in no event less than $400. In the event a month-to-month lessee subsequently executes a lease, either direct with Owner/Lessor or through Broker, within 24 months from the date of occupancy of the month-to-month lessee, then Broker shall receive a leasing commission in accordance with the provisions of this Schedule.
4. **Extension of Lease or Additional Space Taken:** Should the term of the lease be extended or the lessee occupy additional space then a leasing commission shall be paid when said term is extended or said additional space is occupied. The leasing commission shall be computed in accordance with the provisions of this Schedule and by using the rates applicable as if the initial term of lease had included said extension period or the premises initially demised had included said additional space.
5. **Purchase of Property by Lessee:** Should lessee, lessee's successors, or assignees purchase the subject property during the term of the lease or any extension thereof or within 180 days after expiration, thereof, then a sales commission shall be paid when the purchase is effected. Said sales commission shall be computed in accordance with the provisions of this Schedule, less the amount of paid lease commissions related to that portion of the lease term extending beyond the effective date of said purchase.

DS
INITIAL RM



## C. PAYMENT OF EARNED COMMISSIONS

1. Commissions shall be paid through escrow upon the closing of sales and exchange transactions; absent an escrow, commissions shall be paid upon recordation of deed or upon delivery of such deed or other conveyance if recordation is deferred more than one month thereafter. In the event of a contract or agreement of sales, joint venture agreement, business opportunity or other transaction not involving the delivery of a deed, commissions shall be paid upon execution and delivery of the instrument of conveyance or establishment of the entitlement of ownership.
2. Leasing and subleasing commissions shall be paid upon execution and delivery of a lease by Owner/Lessor and Lessee.
3. Broker is hereby authorized to deduct its commission pursuant to this Schedule from funds held in its trust account; Owner shall promptly pay any difference in cash in accordance herewith.

## D. MISCELLANEOUS

1. If Owner/Lessor fails to make any payment at the time required herein, the delinquent sum(s) shall bear interest at the maximum rate permitted by law.
2. This Schedule and the Agreement to which it is attached are binding on Broker only when executed by both parties without modification of the printed terms; provided that any such unauthorized modifications will be enforceable by Broker at its option, provided further that any office of Broker is authorized to modify such terms by executing such Agreement or by initialing such modifications.
3. This Schedule shall be used only for transactions in which **Lee & Associates Commercial Real Estate Services, Inc. - Riverside** is involved and shall not be distributed to any other party.

The undersigned hereby acknowledges receipt of a copy of this schedule and agrees to pay a commission (s) as provided herein.

| | |
|---|---|
| **Owner: Mowbray Waterman Property, LLC** | **Broker: Lee & Associates Commercial Real Estate Services, Inc. – Riverside**<br>**Corporate DRE # 01048055** |
| By: DocuSigned by: Robin Mowbray 535733985426408... | By: DocuSigned by: Cody Moran 185FD1D6E30F4A4... |
| Name/Title: Robin Mowbray/Owner | Name/Title: Cody Moran/Vice President |
| By: | By: DocuSigned by: Les Copelin 4E8CB78FF4974DA... |
| Name/Title: | Name/Title: Les Copelin/Senior Vice President |
| Date: 2025-Feb-26 \| 10:54 PST | Date: 2025-Feb-26 \| 10:59 PST 2025-Feb-26 \| 13:40 PS |

INITIAL DS RM



**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP**
**(As required by the California Civil Code)**

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT (including a lessor's agent)**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.

(b) A duty of honest and fair dealing and good faith.

(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT (including a lessee's agent)**

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

**To the Buyer:** A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer.

**To the Buyer and the Seller:**

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.

(b) A duty of honest and fair dealing and good faith.

(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER (including lessor and lessee)**

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:

(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.

(b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on the reverse hereof. Read it carefully.**

**| DISCLOSURE RECEIVED BY:**

**DISCLOSURE MADE BY:**

Lee & Associates Commercial Real Estate Services, Inc. – Riverside DRE License # 01048055

Agent: Cody Moran/Les Copelin

DRE: 02036603/00995220 Date: 2025-Feb-26 | 10:55 PST 2025-Feb-26 | 13:40 MST

DocuSigned by: Cody Moran 185FD1D6E30F4A4... DocuSigned by: Les Copelin 4E8CB78FF4974DA...

**DISCLOSURE RECEIVED BY:**

DocuSigned by: Robin Mowbray 535733985426498... Date: 2025-Feb-26 | 10:54 PST

Check one: ___Buyer / ___Seller / ___Lessor / ___Lessee

________________________________ Date: ______________________

Check one: ___Buyer / ___Seller / ___Lessor / ___Lessee

NOTE:

If the listing brokerage company also represents buyer/lessee, then the Listing Agent shall have one Agency Disclosure form signed by seller/Lessor and a separate Agency Disclosure form signed by buyer/lessee.

If seller/Lessor and buyer/lessee are represented by different brokerage companies, then: (i) the Listing Agent shall have one Agency Disclosure form signed by seller/Lessor and (ii) the buyer's/lessee's Agent shall have one Agency Disclosure form signed by buyer/lessee and either that same or a different Agency Disclosure form presented to seller/Owner for signature prior to presentation of the offer. **If the same form is used, seller/Lessor may sign here:**

________________________________________________; Date: _________________

(check one: _____Seller / _____Lessor)

INITIAL DS RM



**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP**
**CALIFORNIA CIVIL CODE SECTIONS 2079.13 THROUGH 2079.24**

**2079.13**. As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. **(b)** "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. **(c)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. **(d)** "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. **(e)** "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. **(f)** "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. **(g)** "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(h)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. **(i)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(j)** "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(k)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(l)** "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a Owner. **(o)** "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. **(p)** "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14**. Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgment of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: **(a)** The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). **(c)** Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgment of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgment of receipt is required. **(d)** The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15**. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16**. Reproduced on the reverse side of this form.

**2079.17**. **(a)** As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller. **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

[***EXAMPLE ONLY ----*** ________________________ is the agent of (check one): ( ) the seller exclusively; or ( ) both the buyer and seller.
***DO NOT FILL OUT*** *(Name of Listing Agent)*
***OR SIGN]*** ________________________________________________ is the agent of (check one): ( ) the buyer exclusively; or ( ) the seller exclusively;
*(Name of Selling Agent if not the same as the Listing Agent)* or ( ) both the buyer and seller.

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18**. No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19**. The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20**. Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21**. A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22**. Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23**. **(a)** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship. **(b)** A lender or an auction company retained by a lender to control aspects of a transaction of real property subject to this part, including validating the sales price, shall not require, as a condition of receiving the lender's approval of the transaction, the homeowner or listing agent to defend or indemnify the lender or auction company from any liability alleged to result from the actions of the lender or auction company. Any clause, provision, covenant, or agreement purporting to impose an obligation to defend or indemnify a lender or an auction company in violation of this subdivision is against public policy, void, and unenforceable.

**2079.24**. Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

DS
RM
INITIAL__________



# NOTICE TO OWNERS, BUYERS AND TENANTS CONCERNING THE AMERICANS WITH DISABILITIES ACT AND OTHER LAWS

If you are now or are considering becoming an Owner or Tenant of real property, you should be aware that you may be required to comply with the Americans with Disabilities Act of 1990 and other federal, state and local laws and regulations concerning making the property in question accessible on an equal basis to individuals with certain physical or other disabilities. These laws may, among other things, require you to modify the property in question or take other actions necessary to bring the property and its use into compliance with applicable laws. The exact modifications which are necessary vary depending on the nature of the property, the activities which are conducted on the property and the identity of the Owner, Owner or Tenant.

Lee & Associates® has made no investigation and obtained no reports regarding the matters addressed in this Notice, nor can it advise you as to whether the subject property complies with the applicable federal, state and local laws and regulations or what modifications may be required. That determination must be made by attorneys, architects, engineers and other professionals and experts qualified to advise you on these issues. These matters raise legal issues and you are responsible for conducting your own inquiry as to these matters with the advice of such parties as you deem necessary. Lee & Associates® recommends that Owner, Buyers and Tenant consult legal counsel to determine their respective rights and liabilities with respect to the issues described in this Notice, as well as other aspects of the proposed transaction, including what contractual provisions and protections are necessary or desirable, prior to buying or selling any real property or entering into any lease either as a Owner or a Tenant.




INITIAL________

## NOTICE TO OWNERS, BUYERS AND TENANTS REGARDING HAZARDOUS WASTES OR SUBSTANCES AND UNDERGROUND STORAGE TANKS

Comprehensive federal and state laws and regulations have been enacted in the last few years in an effort to develop controls over the use, storage, handling, clean-up, removal and disposal of hazardous wastes or substances. Some of these laws and regulations, such as, for example, the so-called "Superfund Act", provide for broad liability schemes wherein an owner, tenant or other user of the property may be liable for clean-up costs and damages regardless of fault. Other laws and regulations set standards for the handling of asbestos or establish requirements for the use, modification, abandonment, or closing of underground storage tanks.

It is not practical or possible to list all such laws and regulations in this Notice. Therefore, owners, buyers and tenants are urged to consult legal counsel to determine their respective rights and liabilities with respect to the issues described in this Notice as well as all other aspects of the proposed transaction. If hazardous wastes or substances have been, or are going to be used, stored, handled or disposed of on the property, or if the property has or may have underground storage tanks, it is essential that legal and technical advice be obtained to determine, among other things, what permits and approvals have been or may be required, if any, the estimated costs and expenses associated with the use, storage, handling, clean-up, removal or disposal of the hazardous wastes or substances and what contractual provisions and protections are necessary or desirable. It may also be important to obtain expert assistance for site investigations and building inspections. The past uses of the property may provide valuable information as to the likelihood of hazardous wastes or substances, or underground storage tanks being on the property.

Although Lee & Associates® Commercial Real Estate Services, Inc.- Riverside will disclose any knowledge it actually possesses with respect to the existence of hazardous wastes or substances, or underground storage tanks on the property, Lee & Associates® Commercial Real Estate Services, Inc.- Riverside has not made investigations or obtained reports regarding the subject matter of this Notice, except as may be described in a separate written document signed by Lee & Associates® Commercial Real Estate Services, Inc.- Riverside. Lee & Associates® Commercial Real Estate Services, Inc.- Riverside makes no representations regarding the existence or nonexistence of hazardous wastes or substances, or underground storage tanks on the property. You should contact a professional, such as a civil engineer, geologist, industrial hygienist or other persons with experience in these matters to advise you concerning the property.

The term "hazardous wastes or substances" is used in this Notice in its very broadest sense and includes, but is not limited to, petroleum base products, paints and solvents, lead, cyanide, DDT, printing inks, acids, pesticides, ammonium compounds, asbestos, PCBs and other chemical products. Hazardous wastes or substances and underground storage tanks may be present on all types of real property. This Notice is therefore meant to apply to any transaction involving any type of real property, whether improved or unimproved.

INITIAL DS RM



# EXHIBIT 2

LEE & ASSOCIATES
COMMERCIAL REAL ESTATE SERVICES

# EXCLUSIVE AUTHORIZATION TO SELL

**Mowbray Waterman Property, LLC, a California limited liability company** (the "Owner") hereby grants to **Lee & Associates Walnut Creek Commercial Real Estate Services, Inc**. (the "Broker") the exclusive right to sell the subject Property for a period commencing on **March 17, 2025** and ending at midnight on **March 31, 2026)** (the "Expiration Date") (the "Authorization Term"). The Property is located at **9546 Elder Creek Road** in the City of **Sacramento (unincorporated),** County of **Sacramento,** and state of **California** and further described as **a +8.16 acre parcel of industrial land, APN 066-0010-032** (the "Property). The price and terms of the sale(s) shall be as follows**: Two Million, Six Hundred Thousand Dollars ($2,600,000.00), all cash at close of escrow** and subject to Owners sole discretion and approval.

In consideration of this **EXCLUSIVE AUTHORIZATION TO SELL** (the "Authorization") and Broker's agreement to diligently pursue the procurement and retention of purchaser(s) for all of the Property, Owner agrees to pay Broker a commission as set forth in the attached **SCHEDULE OF COMMISSIONS**.

Owner shall pay the commission to Broker if; (a) the Property or any interest therein is sold, transferred, or conveyed by or through the Broker, Owner, or any other party prior to the Expiration Date of this Authorization, or any extension thereof; or (b) purchaser is procured or introduced who is ready, willing, and able to purchase the subject Property on the terms above stated, or other terms acceptable to Owner prior to the Expiration Date of this Authorization, or any extension thereof, whether procured or introduced by Broker or by the Owner or by or through anyone else; or (c) any contract for the sale, transfer or conveyance of the subject Property or any interest therein is made directly or indirectly by the Owner prior to the Expiration Date of this Authorization, or any extension thereof; or (d) the subject Property is withdrawn from the market for sale without the written consent of Broker, or made unmarketable by Owner's voluntary act during the Authorization Term or any extension thereof; or (e) within ninety (90) days after the Termination Date of this Authorization, as defined below, any portion of the subject Property or any interest therein is sold, transferred, or conveyed to any person or entity with whom Broker has negotiated or to whom Broker has submitted the Property to prior to the Termination Date, as defined below, in an effort to effect a transaction, and whose name appears on any list of persons or entities which Broker shall have delivered to Owner, at the addresses stated below, at any time within thirty (30) days immediately following the Termination Date, as defined below; provided, however, that if Broker has submitted a written offer to purchase, then it shall not be necessary to include the potential buyer(s)'s name on the list.

If, during the Authorization Term of this Authorization or any extension thereof; an escrow is opened or negotiations involving the sale, transfer, conveyance of the Property have commenced and are continuing beyond the Termination Date, then the Authorization Term of this Authorization shall be extended for a period through the closing of such escrow and/or the termination of such negotiations and/or the consummation of such transaction, provided this Authorization would otherwise have terminated during such period. If the Owner desires to terminate this Authorization on or before the Expiration Date, the Owner must deliver to Broker, at the addresses stated below, a written notice terminating this Authorization (the "Termination Notice") stating that this Authorization shall terminate thirty (30) days after Broker receives the Owner's Termination Notice (the "Termination Date"). If the Owner does not deliver a Termination Notice to Broker this Authorization remains binding even after the Expiration Date as an extension thereof.

The Authorization period shall continue automatically for thirty (30) days from and after the end date of the Initial Authorization Period and thereafter be extended again for additional thirty (30) day increments until the Authorization is expressly revoked by Client in writing. Client agrees to provide thirty (30) days' notice to Broker before such express revocation shall be effective. In this Agreement, "Authorization Period" shall refer to the period of time from the start date to the end of the last extension of the Authorization Period.

Owner agrees that Broker shall be included as a party to any escrow opened for the sale of the Property, and the terms of said escrow shall provide that Broker shall have the right to request the escrow holder to make payment to Broker in the amount of Broker's commission as set forth in the **SCHEDULE OF COMMISSIONS** attached hereto from any sale proceeds and/or deposits held in escrow.

Owner agrees to cooperate with Broker in effecting a sale of the Property and immediately refer to Broker all inquiries of any party interested in the Property. All negotiations are to be through Broker. Owner agrees to pay all customary escrow, title, and revenue charges and to execute such documents as may be necessary to affect a sale of the Property. Broker is authorized to deliver to Owner a deposit from any prospective purchaser. Broker is further authorized to advertise the Property, and shall have the exclusive right to place a sign or signs on the Property, if, in Broker's opinion, such would facilitate the sale thereof.

It is understood that it is illegal for either Owner or Broker to refuse to present or sell to any person because of race, color, religion, national origin, sex, marital status or physical disability.

Owner warrants that the undersigned is the owner of record of the Property and has the legal authority to execute this Authorization. Owner agrees to hold Broker harmless from any liability, or damages arising from any incorrect information supplied by Owner or any information, which Owner fails to supply. Owner acknowledges receipt of a copy of this Authorization and the attached **SCHEDULE OF COMMISSIONS**, each of which Owner has read and understands.

**ARBITRATION OF DISPUTES**

**Broker and Owner agree that any claim or controversy will be resolved by submission to binding arbitration at the offices of Judicial Arbitration & Mediation Services, Inc. (JAMS) in the county where the Property is located. The parties may agree on a retired judge from the JAMS panel. If they are unable to agree, JAMS will provide a list of three (3) available judges and each party may strike one. The remaining judge will serve as the arbitrator. The award of the arbitrator shall be a final and non-appealable result. The arbitration award may be entered as a judgment in any court of competent jurisdiction. Such binding arbitration shall be conducted by JAMS in accordance with the California Code of Civil Procedures Section 1280 ET SEQ. and California Rules of Court Sections 1600 to 1617. The parties further agree that the prevailing party of such arbitration shall be entitled to be awarded its costs of suit, including, but not limited to, reasonable attorney's fees, expenses, and the costs of arbitration.**

**NOTICE: By initialing the space below, you are agreeing to have any dispute arising out of the matters included in the "Arbitration of Disputes" provision decided by neutral arbitration as provided by California Law and you are giving up any rights you may possess to have the dispute litigated in a court or by jury trial. By initialing the space below, you are giving up your judicial rights of discovery and appeal, unless those rights are specifically included in the "Arbitration of Disputes" provision. If you refuse to submit to arbitration after agreeing to this provision, you may be compelled to arbitrate under the authority of the California Code of Civil Procedure. Your agreement to this "Arbitration of Disputes" provision is voluntary and by initialing the space below, you acknowledge that you have read the undergoing and the foregoing and agree to its contents.**

**OWNER: (______) (______) BROKER: (______) (______)**
**Initial Initial Initial Initial**

This Authorization may only be amended, supplemented or otherwise altered with the express written consent of all parties hereto and this Authorization embodies the entire understanding of the parties regarding the subject matter hereof.

Receipt of a copy hereof is acknowledged.

| | |
|---|---|
| Dated: | Dated: March 13, 2025 |
| **OWNER: Mowbray Waterman Property Company, LLC** | **BROKER: Lee & Associates Walnut Creek** |
| **A California limited liability company** | **Commercial Real Estate Services, Incorporated** |
| By: | By: |
| Name: Robin Mowbray | Name: Michael Walker |
| E-Mail: robin@mowbrays.com | E-Mail: mwalker@lee-associates.com |
| Address: | Address: 1407 Oakland Blvd, Suite 103, Walnut Creek, CA 94596 |
| Main: | Direct: (925) 239-1415 |
| FAX: | Mobile: (510) 914-0310 |
| | FAX: (925) 369-0309 |

LEE & ASSOCIATES
COMMERCIAL REAL ESTATE SERVICES

# SCHEDULE OF COMMISSIONS

In consideration of this **SCHEDULE OF COMMISSIONS** which is made apart of the Authorization for the Property defined and located at **9546 Elder Creek Road** in the City of **Sacramento (unincorporated),** County of **Sacramento**, and State of **California** and further described as **a +8.16 acre parcel of industrial land, APN 066-0010-032**. Broker's agreement to diligently pursue the procurement of purchaser(s) for all of the Property, Owner agrees to pay Broker a commission as set forth herein:

**A. SALES:**

1. **Property**: Six percent (6%) of the gross sales price.

**B. PAYMENT OF EARNED COMMISSIONS:**

1. Commissions shall be paid through escrow upon the closing of sales and exchange transactions; absent an escrow; commissions shall be paid upon recordation of a deed or upon delivery of such deed or other conveyance if recordation is deferred more than one month thereafter. In the event of a contract or agreement of sales, joint venture agreement, business opportunity or other transaction not involving the delivery of a deed, commissions shall be paid upon execution and delivery of the instrument of conveyance or establishment of the entitlement of ownership.

**C. MISCELLANEOUS:**

1. If Owner fails to make any payment at the time required herein, the delinquent sum(s) shall bear interest at the maximum rate permitted by law.
2. This SCHEDULE OF COMMISSIONS and the Agreement to which it is attached are binding on Broker only when executed by both parties without modification of the printed terms; provided that any such unauthorized modifications will be enforceable by Broker at its option, provided further that any office of Broker is authorized to modify such terms by executing such Agreement or by initialing such modifications.
3. This SCHEDULE OF COMMISSIONS shall be used only for transactions in which **Lee & Associates Walnut Creek Commercial Real Estate Services, Inc.** is involved and shall not be distributed to any other party, except as directed by Broker.

This SCHEDULE OF COMMISSIONS may only be amended, supplemented or otherwise altered with the express written consent of all parties hereto and this SCHEDULE OF COMMISSIONS embodies the entire understanding of the parties with regard to the subject matter hereof.

The undersigned hereby acknowledges receipt of a copy of this SCHEDULE OF COMMISSIONS and agrees to pay a commission(s) as provided herein.

Dated:____________________

**OWNER: Mowbray Waterman Property Company, LLC**
**A California limited liability company**

By:____________________
Name: Robin Mowbray

E-Mail: robin@mowbrays.com
Address:

Main:

Dated: March 17, 2023

**BROKER: Lee & Associates Walnut Creek Commercial Real Estate Services, Incorporated**

By:____________________
Name: Michael Walker

E-Mail: mwalker@lee-associates.com
Address: 1407 Oakland Blvd, Suite 103
Walnut Creek, CA 94596
Mobile: (510) 914-0310
Main: (925) 239-1429

# EXHIBIT 3



# LES COPLIN

Senior Vice President

*INDUSTRIAL & OFFICE*

INLAND EMPIRE, CA

**O** 951.276.3629
**C** 951.275.3671
**F** 951.276.3650
**lcoplin@lee-associates.com**
**lee-associates.com**
3240 Mission Inn Avenue
Riverside, CA 92507
*DRE: 01417045*

## PROFILE

Les Copelin specializes in office, multi-tenant industrial properties and land throughout the Inland Empire, primarily focusing on the East end of the Inland Empire consisting of the area of San Bernardino, Redlands, Colton, and Grand Terrace. Les specializes in working with business owners, tenants, and buyers for the purpose of leasing, selling, or purchasing properties or leasing space in the Inland Empire and greater Southern California marketplace. As a long-time market expert, Les also serves tenants, investors, and developers with a primary focus on building long term relationships with clients while becoming an "in-house" real estate expert for clients.

## EXPERIENCE

Les was first introduced to the Inland Empire when moving from San Diego to attend the University of Redlands, which he graduated from in 1985 with a BS in Business Administration. After playing a season of professional baseball in Australia, Les returned to the Inland Empire to get an MBA in Finance from Cal State San Bernardino, graduating in 1988. Les began working for a prominent local developer, The Sunset Group, managing all in-house office leasing. After three very successful years with Grubb & Ellis, Les joined Lee & Associates - Riverside in 1993. In his 32 years with Lee & Associates, Les has leased and sold over 6 million square feet of office and industrial space. Les has a strong and successful relationship with the County of San Bernardino, facilitating several build-tosuit office projects in the past several years, as well as completing several county office leases.

## PARTIAL CLIENT LIST

- United Therapy Network
- The Original Mowbray's Tree Service
- Five Oaks Speech Therapy
- Victor Community Services
- Self Determined Futures, LLC
- Orange Coast Title
- State of CA – Cal Trans
- County of San Bernardino
- ICO Development
- Coast Properties Investors, LLC
- Birtcher Development
- Triad Investments
- The Koll Company
- Wohl Investments
- Greenwood & McKenzie
- Gildred Development
- Coussoulis Development

## EDUCATION

- MBA - California State University, San Bernardino, 1988
- BS - University of Redlands, 1985

## CAREER TIMELINE

- Lee & Associates - Riverside 1993-Present
- Grubb & Ellis 1990-1993
- The Sunset Group 1989-1990




LOCAL EXPERTISE. INTERNATIONAL REACH. WORLD CLASS.

# EXHIBIT 4



# CODY MORAN

Vice President

*INDUSTRIAL & LAND*

INLAND EMPIRE, CA

**O** 951.276.3624
**C** 949.370.1937
**F** 951.276.3650

**cmoran@lee-associates.com**
**lee-associates.com**
3240 Mission Inn Ave.
Riverside, CA 92507
*DRE: 02036603*

## PARTIAL CLIENT LIST

- Atlas Technical Consultants
- Ancon Services
- BRS Roofing
- Cavalry Ambulance
- Eisenhower Imaging
- Ez-Pro Texture
- Family Services Association
- Fullmer Construction
- Golden State Grating
- Ironclad Civil Services
- International Link Logistics
- Parex USA
- Phenix Technology
- SIKA US
- Seidner's Collision Centers
- Urban Habitat
- Trueline Construction & Surfacing
- The Original Mowbray's Tree Service

## CAREER SUMMARY

Cody Moran is a market expert in Industrial and Commercial properties across the Inland Southern California Region, serving clients in Riverside and San Bernardino Counties. Cody first joined Lee & Associates in 2010. Cody has a vast range of experience in real estate, leasing, transaction management and financial services. Cody specializes in Landlord and Buyer/Tenant representation throughout Southern California. He has a wealth of knowledge in industrial/manufacturing and logistics properties, land, contractor's yard properties, as well as owner-user commercial building sales and value-add sites.

Cody is an advocate for his clients, always seeking the highest outcomes possible in any real estate transaction. Cody's client-centric approach and business model makes him a great partner to Landlords, Tenants, Sellers, Buyers, Investors, and Regional Companies managing real estate across various markets.

Cody was the top performing Associate companywide in 2020 and was appointed Shareholder in 2021

## EDUCATION

Cody is a graduate of Azusa Pacific University with a BA in Organizational Communication & Business.

## MEMBERSHIPS AND ASSOCIATIONS

- Member of the National Association of Industrial and Office Properties (NAIOP)
- Member of the American Industrial Real Estate Association (AIR)

## CAREER HISTORY

As a licensed agent, Cody's familial ties to commercial real estate date back to the 1930's. Moran Properties, Inc. acquired, improved, developed, and leased millions of square feet of industrial properties throughout Southern California and the Inland Empire for over 50 years.




LOCAL EXPERTISE. INTERNATIONAL REACH. WORLD CLASS.

# EXHIBIT 5



# MICHAEL WALKER

Principal

INDUSTRIAL & INVESTMENT BROKERAGE

WALNUT CREEK, CA

O 925.239.1415
C 510.914.0310

mwalker@lee-associates.com
lee-associates.com

1407 Oakland Boulevard, Suite 103
Walnut Creek, CA 94596
License ID: 01981426

## PARTIAL CLIENT LIST

- APLL
- AMB
- Chevron
- Chamberlin
- DuPont
- Dow Chemical
- D.R. Stephens
- Extron
- First Industrial Realty Trust
- Fresh and Easy
- Harsch Investment Properties
- Harvest Properties
- JC Paper
- Legacy Partners
- Leggett & Platt
- McMorgan
- North Bay Regional Center
- Opus
- Owens Illinois
- Panattoni Development
- ProLogis
- Restoration Hardware
- RREEF
- Safeway Stores
- Whole Foods




## PROFILE

Michael specializes in real estate service delivery and representation for private and insitutional owners and users of industrial, office, land and investment properties. Michael is known for his systematic approach to working through the transactional process. He is skilled at anticipating potential problems and applying foresight to mitigate their potential impact. His clear and thorough approach to communication gives clients confidence and builds consensus among decision-makers.

Prior to joining the Lee & Associates Walnut Creek office, Michael was a Vice President at CBRE and has been a commercial broker in the East Bay since 1985.

## NOTABLE RECENT TRANSACTIONS INCLUDE

| Type | Size | Client | Location |
|---|---|---|---|
| Sale | 594,000 SF | Safeway HQ | Pleasanton |
| Lease | 350,000 SF | Kaiser Permanente | Oakland |
| Sale | 320,000 SF | Mervyn's HQ | Hayward |
| Sale | 30,000 SF | Men's Warehouse | Alameda |
| Sale | 1,800,000 SF | Safeway | Chicago |
| Sale | 4,200,000 SF | RREEF America Portfolio | Multiple Cities |
| Sale | 720,000 SF | Opus West | Hayward |
| Sale | 900,000 SF | ZKS Benicia IP | Benecia |
| Sale | 158,000 SF | U.S. Food Service | Union City |
| Lease | 146,000 SF | Logitech HQ | Fremont |
| Lease | 2,900,000 SF | APLL | Multiple Cities |
| Lease | 420,000 SF | Mervyn's | Hayward |

## NOTABLE LAND TRANSACTIONS INCLUDE

| Type | Size | Client | Location |
|---|---|---|---|
| Sale | 200 ACRES | IDI | Stockton |
| Sale | 200 ACRES | Safeway | Tracy |
| Sale | 130 ACRES | First Industrail | Stockton |
| Sale | 130 ACRES | McShane Companies | Tracy |
| Sale | 72 ACRES | Opus West | Fremont |
| Sale | 70 ACRES | Kaiser | San Leandro |
| Sale | 37 ACRES | Mervyn's | Hayward |
| Sale | 30 ACRES | Solyndra | Fremont |
| Sale | 29 ACRES | Freestone Properties | Fremont |
| Sale | 25 ACRES | Transcon | Fremont |
| Sale | 22 ACRES | Sysco Foods | Fremont |
| Sale | 21 ACRES | Hohener | San Leandro |
| Sale | 21 ACRES | Trammell Crow | Hayward |
| Sale | 20 ACRES | Opus | Hayward |

## EDUCATION

- UC Berkeley | Bachelor of Arts in Political Science

## COMMUNITY INVOLVEMENT

- United States Naval Academy Admissions, Blue and Gold Officer

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10345 W. Olympic Blvd., Los Angeles, California 90064

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF DEBTOR'S APPLICATION TO EMPLOY LEE & ASSOCIATES WALNUT CREEK COMMERCIAL REAL ESTATE SERVICES, INC., AND LEE & ASSOCIATES COMMERCIAL REAL ESTATE SERVICES, INC. – RIVERSIDE AS REAL ESTATE BROKERS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 26, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) March 26, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 26, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Theodor C. Albert, Chief Judge
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5085 / Courtroom 5B
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 26, 2025 | Lauren B. Wageman | /s/ Lauren B. Wageman |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Kenneth J Catanzarite** kcatanzarite@catanzarite.com
- **Lauren N Gans** lgans@elkinskalt.com, TParizad@elkinskalt.com
- **Jessica L Giannetta** jessica@giannettaenrico.com, melanie@giannettaenrico.com
- **Queenie K Ng** queenie.k.ng@usdoj.gov
- **Todd C. Ringstad** becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Ahren A Tiller** ahren.tiller@blc-sd.com, 4436097420@filings.docketbird.com;brett.bodie@blc-sd.com;anika@blc-sd.com;derek@blc-sd.com;kreyes@blc-sd.com;megan@blc-sd.com;nicole@blc-sd.com;danny@blc-sd.com;angie@blc-sd.com;kreyes@blc-sd.com
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov
- **Roye Zur** **r**zur@elkinskalt.com, lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com